# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

CARMELA INGRAM as Mother and Next )
Friend of minors, TI, DI, BI, JI and QI, )
                                               )
            Plaintiff, )
                                                )
vs.                                           )       CIVIL NO. 10-933-GPM
                                                )
ILLINOIS DEPARTMENT OF )
CORRECTIONS and DAVID REDNOUR in )
his individual capacity as Warden of the )
Menard Correctional Center, )
                                                )
           Defendants. )

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

This is an action under the Illinois Wrongful Death Act, 740 ILCS 180/0.01 *et seq*., and the Illinois Survival Act, 755 ILCS 5/27-6. Plaintiff Carmela Ingram brings suit in connection with the death of her husband James Ingram on behalf of herself and as next friend of Mr. and Mrs. Ingram's minor children TI, DI, BI, JI, and QI. According to the allegations of Mrs. Ingram's complaint, on June 26, 2010, Mr. Ingram, who was incarcerated at the time in the Menard Correctional Center ("Menard") in Chester, Illinois, died of hyperthermia as a result of being confined in isolation in an overheated cell without adequate monitoring by guards. Named as Defendants in the case are the Illinois Department of Corrections ("IDOC") and David Rednour, the warden of Menard. Count I and Count II of Mrs. Ingram's complaint assert claims for negligence against the IDOC and Rednour pursuant to, respectively, the Wrongful Death Act and the Survival Act. Count III and Count IV of the complaint assert claims for willful and wanton negligence against the IDOC and Rednour

pursuant to, respectively, the Wrongful Death Act and the Survival Act.  Finally, Count V asserts a claim under 42 U.S.C. § 1983 against the IDOC and Rednour in his individual capacity.  This case is before the Court on a motion for dismissal for failure to state a claim upon which relief can be granted of Mrs. Ingram's claims against the IDOC and of Mrs. Ingram's state-law claims against Rednour (Doc. 12).

In considering a motion to dismiss for failure to state a claim upon which relief can be granted, the Court accepts all well-pleaded allegations in a plaintiff's complaint as true.  *See* Fed. R. Civ. P. 12(b)(6); *Cleveland v. Rotman*, 297 F.3d 569, 571 (7th Cir. 2002); *Whitwell v. Wal-Mart Stores, Inc.*, Civil No. 09-513-GPM, 2009 WL 4894575, at *2 (S.D. Ill. Dec. 11, 2009). The purpose of a Rule 12(b)(6) motion is to decide the adequacy of the complaint, not the merits of the case.  *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990); *Morrison v. YTB Int'l, Inc.*, 641 F. Supp. 2d 768, 773 (S.D. Ill. 2009).  A complaint should not be dismissed unless it either fails to provide adequate notice of a plaintiff's claim for relief or does not contain "enough facts to state a claim to relief that is plausible on its face," that is, the claim has not been "nudged . . . across the line from conceivable to plausible[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See also EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the . . . grounds . . . of his . . . entitlement to relief . . . requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  *Heinze v. Southern Ill. Healthcare*, Civil No. 08-672-GPM, 2010 WL 276722, at *2 (S.D. Ill. Jan. 19, 2010) (quoting *Bell Atl. Corp.*, 550 U.S. at 555) (brackets omitted).

With respect to the claims asserted against the IDOC in this case, the parties agree that the agency is not a proper party to this suit. "[T]he Eleventh Amendment prohibits a suit in federal court 'in which the State or one of its agencies or departments is named as the defendant.'" *Moore v. Indiana*, 999 F.2d 1125, 1128 (7th Cir. 1993) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). The IDOC, as an Illinois state agency, enjoys immunity from suit in federal court. *See Ford v. Lane*, 714 F. Supp. 310, 313 (N.D. Ill. 1989). A state may waive Eleventh Amendment immunity. *See MCI Telecomms. Corp. v. Illinois Bell Tel. Co*., 222 F.3d 323, 337 (7th Cir. 2000). However, Illinois has waived its sovereign immunity only to the extent of authorizing itself to be sued in the Illinois Court of Claims. *See Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (citing 705 ILCS 505/8(d)); *Williamson Towing Co. v. Illinois*, 534 F.2d 758, 759-60 (7th Cir. 1976). As to Mrs. Ingram's claim against the IDOC under 42 U.S.C. § 1983, that statute provides, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. In general, "states and their agencies are not 'persons' subject to suit under 42 U.S.C. § 1983[.]" *Johnson v. Illinois Supreme Court*, 165 F.3d 1140, 1141 (7th Cir. 1999) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989)). Also, while it is the case that Congress can abrogate state sovereign immunity, Section 1983 does not abrogate the Eleventh Amendment immunity of a state and its agencies from suit in federal court. *See Quern v. Jordan*, 440 U.S. 332, 338-45 (1979); *Meadows v. Indiana*, 854 F.2d 1068, 1070 n.3 (7th Cir. 1988);

*Wooden v. Barone*, No. 06-CV-790-JPG, 2007 WL 2481170, at *2 (S.D. Ill. Aug. 29, 2007). Accordingly, the claims against the IDOC in this case will be dismissed without prejudice to re-filing them in the Illinois Court of Claims.

With respect to the claims asserted in Mrs. Ingram's complaint against Rednour under the Wrongful Death Act and the Survival Act, the issue for the Court to decide is whether these claims are barred by sovereign immunity. Under the Illinois State Lawsuit Immunity Act ("ISLIA"), 745 ILCS 5/0.01 *et seq*., the State of Illinois "shall not be made a defendant or party in any court" except as provided in either the Illinois Public Labor Relations Act, 5 ILCS 315/1 *et seq*., or the Illinois Court of Claims Act, 705 ILCS 505/1 *et seq.* 745 ILCS 5/1. The Court of Claims Act vests exclusive jurisdiction in the Court of Claims in all actions "against the State founded upon any law of the State of Illinois." 705 ILCS 505/8(a). State sovereign immunity rules apply to state-law causes of action brought in federal court against state officials. *See Omosegbon v. Wells*, 335 F.3d 668, 673 (7th Cir. 2003). Under Illinois law, a claim against an individual will be considered a claim against the State of Illinois, even when the individual is sued in his or her individual capacity, if "judgment for the plaintiff could operate to control the actions of the State or subject it to liability." *Loman v. Freeman*, 890 N.E.2d 446, 453 (Ill. 2008). *See also Feldman v. Ho*, 171 F.3d 494, 498 (7th Cir. 1999) (under the ISLIA, in a suit against an official of the State of Illinois, "Illinois treats the state as the real party in interest, provides the public official with absolute immunity, and channels any litigation to the Illinois Court of Claims with the state as the defendant, whenever judgment for the plaintiff would control the state's actions."). The question to be resolved by the Court, then, is whether the state-law claims asserted against Rednour in this case in fact are asserted against the State of Illinois.

"While sovereign immunity dictates that the State can be sued only in the Court of Claims, the determination of whether an action is in fact a suit against the State turns upon an analysis of the issues involved and the relief sought, rather than the formal designation of the parties." *In re Lawrence M.*, 670 N.E.2d 710, 713 (Ill. 1996). Thus, sovereign immunity cannot be avoided "by making an action nominally one against the servants or agents of the State when the real claim is against the State of Illinois itself and when the State of Illinois is the party vitally interested." *Sass v. Kramer*, 381 N.E.2d 975, 977 (Ill. 1978). An action is against the State of Illinois for sovereign immunity purposes when:

> [T]here are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State[.]

*Sneed v. Howell*, 716 N.E.2d 336, 340 (Ill. App. Ct. 1999). With respect to the first prong of the test, "[a]n employee's actions are considered within the scope of employment where the alleged facts are consistent with an intent to further the state's business." *Sellers v. Rudert*, 918 N.E.2d 586, 592 (Ill. App. Ct. 2009). Correspondingly, a plaintiff seeking to sue employees of an Illinois state agency must show that the defendants harbored personal animosity toward the plaintiff or that they committed the alleged acts for reasons other than what the defendants perceived to be in the best interests of the state agency. *See, e.g., Cortright v. Doyle*, 898 N.E.2d 1153, 1160 (Ill. App. Ct. 2008) (in a suit against employees of the Illinois Department of Children and Family Services ("DCFS"), finding that the defendants' alleged conduct did not exceed the scope of their authority where plaintiff "failed to allege any specific facts in her complaint that showed the supervisors harbored personal animosity toward her or acted for any purpose other than what they

perceived to be the best interests of DCFS"). "When the Illinois courts speak of an act 'beyond the scope of authority,' they contemplate an employee acting not just in a wrongful *manner*, but sticking his nose in business where it doesn't belong." *Turpin v. Koropchak*, 567 F.3d 880, 883 (7th Cir. 2009) (emphasis in original).

Here, it cannot seriously be disputed that it was within the scope of Rednour's authority as the warden of Menard to supervise, train, and direct IDOC personnel at Menard, to place prisoners at Menard in isolation, to monitor the condition of prisoners in isolation, to see that such prisoners are afforded adequate medical care, and so forth, and all of Rednour's complained-of actions involve matters within Rednour's normal and official functions as an IDOC official. Mrs. Ingram's allegations challenge only the manner in which Rednour carried out his official duties, and she does not allege that Rednour did anything that was beyond the scope of his authority or that Rednour's actions were outside his normal and official functions. *See Branham v. Mengler*, No. 04-2281, 2005 WL 3534223, at *3 (C.D. Ill. Dec. 21, 2005) (allegations that a dean at a state university made false promises of tenure to an associate professor were barred by sovereign immunity where the dean had authority to make statements of the general type alleged and thus was acting within the scope of his authority); *Witt v. Correctional Officer Andrew*, No. 99 C 2866, 2000 WL 1349246, at **2-3 (N.D. Ill. Sept. 19, 2000) ("The court cannot imagine any set of conceivable facts where Andrew's negligent discharge of his shotgun while he was on duty as an armed guard in the prison could be considered outside the scope of the duties imposed upon him by his state employment."); *Healy v. Vaupel*, 549 N.E.2d 1240, 1247-48 (Ill. 1990) (allegations that athletic directors at a state university negligently failed properly to supervise or train employees, failed to supervise the training and conditioning techniques of gymnasts, including the plaintiff, negligently hired employees of the

university's athletic department, failed properly to supervise the rehabilitation of injured athletes, and failed to warn the plaintiff of the dangerous nature of the gymnastic activities the plaintiff was directed to perform concerned matters within the scope of the defendants' authority).

Also, the sole source of the duties Rednour is alleged to have breached – as noted, to supervise, train, and direct IDOC personnel at Menard adequately, to monitor the condition of prisoners in isolation, and to see that such prisoners are afforded adequate medical care – is Rednour's employment by the State of Illinois. "Where the charged act of negligence arose out of the State employee's breach of a duty that is imposed on him *solely* by virtue of his State employment, sovereign immunity will bar maintenance of the action in circuit court." *Currie v. Lao*, 592 N.E.2d 977, 980 (Ill. 1992) (emphasis in original). *See also Turner v. Miller*, 301 F.3d 599, 602 (7th Cir. 2002) (holding that sovereign immunity barred a state-law negligence claim against Illinois prison officials brought by a prisoner in IDOC custody to recover for injuries the prisoner allegedly sustained when he was shocked by exposed electrical wires in a prison shower: "the relationship between Turner and the defendants would not have had a source outside the employment status of the defendants, and whatever duty was owed by the defendants to Turner existed because of Turner's status as a prisoner and his presence at Stateville Correctional Center."); *Magdziak v. Byrd*, 96 F.3d 1045, 1049 (7th Cir. 1996) (finding that an Illinois state policeman who, while conducting a high-speed chase, killed a third party was entitled to claim sovereign immunity, because "the duties allegedly breached by Byrd relate specifically to his conduct of the high speed chase (rather than his driving in general) and arise solely out of state regulations and police directives."); *Brandon v. Bonell*, 858 N.E.2d 465, 482 (Ill. App. Ct. 2006) (allegations by state

prisoners injured by hot grease while working in a prison kitchen that prison kitchen managers breached a duty created by the Illinois Unified Code of Corrections and imposed solely on the IDOC to maintain prison kitchen facilities and adjacent grounds properly were barred by sovereign immunity). *Cf. Jinkins v. Lee*, 807 N.E.2d 411, 420 (Ill. 2004) (sovereign immunity did not bar a widow's medical malpractice action against mental health professionals employed at a state mental health care facility alleging that the defendants' failure to commit the plaintiff's late husband involuntarily due to mental illness resulted in the husband's suicide, because "the source of the defendants' duty was their status as mental health professionals, rather than their employment by the state."). Because Mrs. Ingram's state-law claims against Rednour allege the breach of duties that arose solely because of Rednour's status as a state prison official, those claims are barred by state sovereign immunity.

Although Mrs. Ingram argues that, because she alleges that Rednour acted in a willful and wanton manner, this is sufficient to take her claims against Rednour under the Wrongful Death Act and the Survival Act out of the scope of sovereign immunity, the Court does not agree. It is true that, under Illinois law, "malice, if well pleaded, is outside the scope of a State employee's employment." *Management Ass'n of Ill., Inc. v. Board of Regents of N. Ill. Univ.*, 618 N.E.2d 694, 705 (Ill. App. Ct. 1993). *See also Patterson v. Burge*, 328 F. Supp. 2d 878, 887 (N.D. Ill. 2004) (allegations that the defendants acted "intentionally and maliciously in violation of Illinois state law" withstood a state sovereign immunity challenge); *Hoffman v. Yack*, 373 N.E.2d 486, 490 (Ill. App. Ct. 1978) ("It is here alleged that Yack's actions were deliberate, malicious and not within the scope of his duties. When an employee of the State exceeds his authority by wrongful acts . . . the injured party may seek relief from the wrongdoer personally[.]") (collecting cases).

However, to plead malice in an Illinois court "there must be specific facts supporting the allegations, which, if proved, would show malicious conduct." *Welch v. Illinois Supreme Court*, 751 N.E.2d 1187, 1195 (Ill. App. Ct. 2001). Here the allegations of Mrs. Ingram's complaint do not state facts giving rise to an inference that Rednour acted with malice. Also, in *Richman v. Sheahan*, 270 F.3d 430 (7th Cir. 2001), the court held that a plaintiff's state-law wrongful death and survival claims were barred by sovereign immunity where the claims were "dependent . . . on a theory of wilful and wanton negligence[.]" *Id*. at 442. *See also Robb v. Sutton*, 498 N.E.2d 267, 271 (Ill. App. Ct. 1986) (allegations of willful and wanton conduct assert merely that a state employee behaved in a reckless manner, not a malicious one). The allegations of willful and wanton conduct by Rednour contained in the complaint in this case do not defeat the bar of sovereign immunity.

To conclude, the motion to dismiss (Doc. 12) brought by the IDOC and Rednour is **GRANTED**. The claims asserted against the IDOC in Count I, Count II, Count III, Count IV, and Count V of Mrs. Ingram's complaint are **DISMISSED without prejudice**. The claims asserted against Rednour in Count I, Count II, Count III, and Count IV of Mrs. Ingram's complaint are **DISMISSED without prejudice**. Mrs. Ingram's claim under 42 U.S.C. § 1983 against Rednour in his individual capacity in Count V of Mrs. Ingram's complaint remains pending before the Court.

**IT IS SO ORDERED.**

DATED: April 20, 2011

/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge